UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **ADMAR INTERNATIONAL, INC., ET AL.** | **CASE NO. 3:20-CV-00904** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **EASTROCK, L. L. C.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2), or alternatively, for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6) [doc. # 10], filed by defendant, Eastrock, L.L.C. d/b/a Haakaa USA ("Eastrock"). The compound motion is opposed. For reasons that follow, it is recommended that the motion to dismiss for lack of personal jurisdiction be granted, and that the Rule 12(b)(6) motion be denied.

## Background

On July 20, 2020, plaintiffs Admar International, Inc. ("Admar") and Luv n' care, Ltd. ("LNC") filed the instant complaint for copyright and trade dress infringement against defendant Eastrock. Plaintiff, LNC, is a designer and seller of innovative products for use by babies, young children, and their care givers; whereas, plaintiff, Admar, manages intellectual property assets on behalf of LNC and others. (Compl., ¶ 11). Both Admar and LNC are headquartered in Monroe, Louisiana, where they conduct most of their business, maintain corporate books and records, and where employees, officers, and directors are located. *Id*. Among the numerous products conceived, designed, produced, and sold by plaintiffs are teether toys and squeeze feeders. *Id*., ¶¶ 14-16.

**The Teether Toys**

Two of the teether toys sold by LNC are the *Merry Go Round Teether Toy* and the *Hand*

*Teether Toy*.  *Id*., ¶ 15.  The two toys were created in 2008 and published in 2009 in the United States by placing them into interstate commerce.  *Id*.  Admar is the owner of copyrights for the artistic, pictorial, graphic, and sculptural features of the foregoing toys.  *Id*.  Admar authorized LNC to use its copyrights in the *Merry Go Round Teether Toy* and the *Hand Teether Toy*.  *Id*.

On July 8, 2020, Admar filed a copyright application with the Registrar of the United States Copyright Office for the *Merry Go Round Teether Toy* and the *Hand Teether Toy*.  *Id*., ¶¶ 17-19.  According to plaintiffs, however, the Copyright Office "wrongfully refused registration" of the teethers.  *Id*.

Meanwhile, plaintiffs contend that defendant Eastrock is displaying to the public by way of advertising, promoting, and offering for sale in this district a *Silicone Ferris Wheel Teether* and *Palm Teether* (the infringing works) that are copies and derivatives of plaintiff Admar's copyrighted works.  *Id*., ¶ 20.  Furthermore, Eastrock continues to display the infringing works publicly by advertising, promoting, and offering them for sale on its website www.haakaausa.com and on www.amazon.com, which are directed towards consumers and residents in this judicial district.  *Id*.

**The Squeeze Feeder**

Plaintiff, LNC, is the creator, designer, and owner of its squeeze feeder product configuration, known as the Squeeze Feeder Trade Dress, which is registered with the Louisiana Secretary of State and bears Registration No. WEB 67-0112.  (Compl., ¶ 22).  According to LNC, its Squeeze Feeder Trade Dress is entitled to the full benefits of La. R.S. §§ 51:211 *et seq*., and also is protected under the federal Lanham Act, 15 U.S.C. §§ 1051, *et seq*.  *Id*.

LNC asserted that since its introduction in 2009, its Squeeze Feeder Trade Dress has achieved substantial success, good will, and secondary meaning as evidenced by LNC's sale of more than 250,000 squeeze feeders.  *Id*., ¶ 23.  Furthermore, "LNC's unique and distinctive Squeeze

2

Feeder Trade Dress serves as a trademark identifying . . . LNC as the sole source of the product."
*Id*.

LNC contends that Eastrock's Baby Food Dispensing Spoon is a knock-off copy of its Squeeze Feeder Trade Dress.  (Compl., ¶ 25).  LNC asserted that Eastrock intentionally used, promoted, advertised, marketed, distributed, offered for sale, and sold products in Louisiana that used LNC's Squeeze Feeder Trade Dress, including Eastrock's Baby Food Dispensing Spoon.  *Id*.  Furthermore, Eastrock's Baby Food Dispensing Spoon copies LNC's registered and distinctive Squeeze Feeder Trade Dress and is likely to cause confusion or mistake to deceive consumers, customers, and potential purchasers who are Louisiana residents.  *Id*.

**The Theories of Recovery**

Plaintiffs charge Eastrock with copyright infringement pursuant to 17 U.S.C. § 501 for Eastrock's intentional infringement of the copyrights to Admar's toy teether works titled *Merry Go Round Teether Toy* and *Hand Teether Toy* and for infringement of LNC's state and federal trade dress rights in its Squeeze Feeder Trade Dress pursuant to La. R.S. §§ 51:211, *et seq*., and 51:1401, *et seq*., and 15 U.S.C. § 1125.  Plaintiffs seek an injunction, damages, treble damages, costs and attorneys' fees.  (Compl., Preamble).

**The Motion to Dismiss**

On August 12, 2020, Eastrock filed the instant motion to dismiss for lack of personal jurisdiction on the grounds that it lacks minimum contacts with Louisiana; plaintiffs' claims do not arise from Eastrock's contacts with Louisiana; and the exercise of specific personal jurisdiction would not comport with the due process clause of the Fourteenth Amendment.  Eastrock also sought dismissal of plaintiffs' claim for copyright infringement for failure to state a claim upon which relief can be granted because plaintiffs did not provide Eastrock with notice of the basis for their

infringement claims when they failed to identify the copyrightable features of the asserted teethers.

On September 9, 2020, plaintiffs filed their opposition to defendant's motion to dismiss for lack of personal jurisdiction wherein they argued that Eastrock was subject to personal jurisdiction in this forum because it conducts substantial marketing, advertising, promotion, and distribution activities over the internet directed at consumers throughout the United States, including Louisiana. [doc. # 16]. As for defendant's Rule 12(b)(6) argument that plaintiffs failed to provide it with sufficient notice of its copyright claim, plaintiffs clarified that they asserted copyright in the entirety of their teether toys. Plaintiffs maintained that even a cursory comparison between the copyrighted work and the alleged copy sufficed to demonstrate that they are substantially similar.

On September 22, 2020, defendant filed its reply brief. [doc. # 17]. Accordingly, the matter is ripe.

## Analysis

Courts first must find both subject matter and personal jurisdiction before reaching the merits of a claim. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 623 n.2 (5th Cir. 1999) (citations omitted). Dismissal under Rule 12(b)(6) "operates as an adjudication on the merits . . ." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 210 (5th Cir.2016). Accordingly, the court must consider the pending motion to dismiss for lack of personal jurisdiction before it may reach the motion to dismiss for failure to state a claim upon which relief can be granted.

**I.     Personal Jurisdiction**

    a)     General Principles

In a federal question case where the federal statute at issue does not authorize nationwide service of process, a court may assert personal jurisdiction to the extent "reached by the long-arm

statute of the state in which the district court sits." *Point Landing, Inc. v. Omni Capital Intern., Ltd.*, 795 F.2d 415, 427 (5th Cir. 1986); Fed.R.Civ.P. 4(k)(1); *see also Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir.2001). Here, neither side contends that plaintiffs' federal law claims provide for nationwide service of process. Certainly, the Lanham Act does not. *Springboards to Educ., Inc. v. Families In Sch.*, No. 16-2512, 2017 WL 10434713, at *2 (N.D. Tex. Nov. 15, 2017).

Accordingly, the court must look to Louisiana's long-arm statute, which extends jurisdiction to the full limits of the United States Constitution. *See* La. R.S. § 13:3201(B); *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir.2010) (citations omitted). In other words, the sole issue presented is whether exercising *in personam* jurisdiction over the non-resident defendant comports with federal due process. *Jackson, supra*.

For personal jurisdiction to satisfy due process requirements, plaintiffs must establish that "(1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Moncrief Oil Intern., Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citations omitted).

Though minimum contacts may give rise to either "general" or "specific" jurisdiction,[1] plaintiffs argue only the latter, which exists when the "plaintiff's cause of action . . . arises out of or results from the defendant's forum-related contacts." *Willow Bend, L.L.C. v. Downtown ABQ Partners, L.L.C.*, 612 F.3d 390, 392 (5th Cir.2010). Stated differently, "[s]pecific or case-linked jurisdiction depends on an affiliatio[n] between the forum and the underlying controversy (i.e., an

---

[1] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, ___ U.S. ___, 137 S.Ct. 1773, 1780 (2017).

5

activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Walden v. Fiore*, 571 U.S. 277, 134 S.Ct. 1115, 1125, n.6 (2014) (citations and internal quotation marks omitted). Specific jurisdiction is a claim-specific inquiry. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir.2006). Thus, "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Id.*; *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir.2009).

> The Fifth Circuit applies a three-step analysis for the specific jurisdiction inquiry:
>
> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Def. Distributed v. Grewal,* 971 F.3d 485, 490 (5th Cir.2020) (quoting *Seiferth*, 472 F.3d at 271).

If plaintiffs can successfully establish the first two prongs, then the burden shifts to defendant to show that exercising jurisdiction would prove unfair or unreasonable. *Id*.

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden, supra*. The court must look to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. *Id*. (citation omitted). In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden, supra* (citation omitted).

When, as here, "a nonresident defendant timely questions a federal district court's *in personam* jurisdiction over [it], the plaintiff[s] asserting jurisdiction ha[ve] the burden of proving that the court has jurisdiction over the defendant." *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798

6

F.2d 826, 831–32 (5th Cir.1986), on reh'g in part, 836 F.2d 850 (5th Cir.1988) (citations omitted). If the court resolves a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, then plaintiffs need make only a prima facie showing of the jurisdictional facts. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). In assessing whether plaintiffs have made a prima facie showing, the court "must accept as true [the plaintiffs'] uncontroverted allegations, and resolve in [their] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Id*. (citation marks omitted).[2] However, the court need not credit plaintiffs' conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir.2001) (citations omitted).

    b) <u>Evidence Presented</u>

        1) *Alice Hu's Initial & Supplemental Declarations* (M/Dismiss, Exhs. [doc. #s 10-2, 17-1]).

Alice Hu is a manager at Haakaa USA. Eastrock is the distributor of the three products that plaintiffs accuse of trade dress and copyright infringement in this case. Eastrock neither designed nor manufactured the products.

Eastrock has no offices, salespeople or brick-and-mortar locations in the State of Louisiana. It does not direct any advertising or marketing specifically at the State of Louisiana. It has never sent salespeople into Louisiana to sell the accused products. Eastrock does not have a license to do business in Louisiana and does not target Louisiana consumers in any way.

Only two brick-and-mortar stores in Louisiana, in addition to some Target locations, carry any of the products that Eastrock distributes. However, the two brick-and-mortar stores, like those

---

[2] Of course, even if plaintiffs were to avoid a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, they still would be required to prove the jurisdictional facts at trial by a preponderance of the evidence. *Travelers Indem. Co., supra*.

of Target, are third-parties unaffiliated with Eastrock. Both of those stores reached out to Eastrock seeking to carry the products that it distributes (rather than Eastrock reaching out to them). Moreover, neither those two stores, nor any physical Target location in Louisiana, carries the challenged products, i.e., the Baby Food Dispensing Spoon or the accused teethers. Furthermore, BuyBuyBaby does not carry the accused Baby Food Dispensing Spoon or the accused teethers in any brick-and-mortar locations in Louisiana.

Rather, the accused teethers and the Baby Food Dispensing Spoon are only available to Louisiana consumers via the internet, on Amazon.com, Target.com, buybuybaby.com, and Eastrock's own website, haakaausa.com. Eastrock, however, controls only the haakaausa.com website. Eastrock has not made a single sale or otherwise shipped any of the accused teethers and the Baby Food Dispensing Spoon through its haakaausa.com website.

Amazon, Target, and BuyBuyBaby are third-party sites over which Eastrock exercises no control. For purposes of the Amazon and Target websites, Eastrock delivers products to distribution centers that are not located in Louisiana, and Eastrock has no further involvement with the products' shipping. Eastrock has no information regarding what Amazon or Target have sold to Louisiana residents. Eastrock merely ships those products to non-Louisiana distribution centers and has no knowledge or control as to where they are forwarded.

Eastrock, however, does "drop-ship" products for BuyBuyBaby, meaning that when BuyBuyBaby sells products to consumers, it purchases those products from Eastrock, and then Eastrock ships the product(s) directly to the purchasing consumers for BuyBuyBaby. According to shipment data Eastrock maintains, BuyBuyBaby has shipped only one Baby Food Dispensing Spoon to Louisiana since the product was introduced in 2016 and has never sold an accused teether to a Louisiana resident.

Furthermore, Eastrock does not have a contract with BuyBuyBaby under which it has agreed to ship the accused teethers or the Baby Food Dispensing Spoon to Louisiana, or to brick- and-mortar retail outlets across the United States. In other words, Eastrock does not have a contract with BuyBuyBaby that sets forth any terms which would make Louisiana a foreseeable endpoint for its products.

        2)    *The haakaausa.com Website* (Website Excerpts; Pl Opp. Memo. [doc. # 16-3]).

The accused teethers and the Baby Food Dispensing Spoon are sold on the haakausua.com website, which may be accessed by persons in Louisiana. The website permits users to purchase items and appears to accept various forms of direct and indirect payments. Users may login and create accounts and leave product reviews. The website provides contact information, and also advertises free shipping.

    c)    <u>Discussion</u>

In response to defendant's motion to dismiss, plaintiffs principally, if not exclusively, argue that because Eastrock makes the accused products available to Louisiana consumers via various websites, that alone suffices to establish Eastrock's minimum contacts with this forum derived from Eastrock's advertising, marketing, display and offering the accused products for sale in Louisiana to Louisiana residents.

In *Mink v. AAAA Development, L.L.C.*, the Fifth Circuit adopted the reasoning set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* for analyzing the nature and quality of an entity's commercial activity over the internet to determine whether it suffices to support the exercise of personal jurisdiction. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir.1999) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D.Pa.1997)). *Zippo* divided internet sites into three-categories. *Id*. On one end of the spectrum the exercise of personal jurisdiction is proper

"[i]f the defendant *enters into contracts* with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet . . ." *Zippo*, 952 F. Supp. at 1124 (citation omitted) (emphasis added). The Fifth Circuit has construed this side of the spectrum as encompassing "sites whose owners engage in *repeated* online *contacts* with forum residents over the internet, and in these cases personal jurisdiction *may* be proper." *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir.2002) (emphasis added) (citation omitted).

At the opposite end of the spectrum, maintenance of personal jurisdiction is not supported where the website is passive, and the defendant does little more than make information available to those who are interested. *Id*. "The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id*. (citation omitted).

Ultimately, however,

> [a]lthough interactivity along the *Zippo* sliding scale can be an important factor in an internet-based personal jurisdiction analysis because it can provide evidence of purposeful conduct, internet-based jurisdictional claims must continue to be evaluated on a case-by-case basis, focusing on the nature and quality of online and offline contacts to demonstrate the requisite purposeful conduct that establishes personal jurisdiction.

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227 n.7 (5th Cir.2012) (internal citation omitted).

Here, it is manifest that, at minimum, defendant's website, *haakaausa.com*, is interactive and approaching the side of the *Zippo* spectrum that supports the exercise of personal jurisdiction. *See People Sols., Inc. v. People Sols., Inc.*, No. 99-2339, 2000 WL 1030619, at *4 (N.D. Tex. July 25, 2000) (website in middle of spectrum where it had the potential to sell products in the forum state, but never did so). Eastrock's website provides product information, permits purchases, accepts various forms of payment, supports the creation of accounts, and facilitates product reviews. One

glaring divergence from the *Zippo* analysis, however, is that Eastrock has never actually sold or shipped any of the accused products to anyone in Louisiana through its website, haakaausa.com. There also is no evidence of sales of any other products to Louisiana via the haakaausa.com site.

Personal jurisdiction under *Zippo*, however, contemplates actual internet sales to forum residents, not the theoretical possibility of sales. *Springboards to Educ., Inc.*, 2017 WL 10434713, at *6 (citing *Mink, supra*). Plaintiffs' allegations that a defendant is "manufacturing, advertising, promoting, distributing, offering for sale, and/or selling the products and/or services bearing marks and/or branding that is confusingly similar to and/or resembling" the plaintiff's protected product throughout the forum is insufficient to support minimum contacts where plaintiffs fail to identify any actual sales to forum residents stemming from defendant's website. *Springboards to Educ., Inc. v. Hamilton Cty. Read 20*, No. 16-2509, 2017 WL 3023489, at *4 (N.D. Tex. July 14, 2017) (citation omitted).

In the absence of evidence of any actual sales in this state via haakaausa.com, the website serves more as an informational or advertising platform, which does not suffice to support specific, personal jurisdiction, even in the context of intellectual property infringement. *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 345 (5th Cir.2002) (defendant's operation of a website containing company and product information and links to its U.S. subsidiaries does not provide sufficient grounds for the exercise of personal jurisdiction); *Mink*, 190 F.3d at 337 (no specific jurisdiction via defendant's website where there was no evidence that defendant conducted business over the internet by engaging in business transactions with forum residents or by entering into contracts over the internet); *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1378 (Fed. Cir.2017) (while a forum resident *could* purchase an infringing item from defendant's website, there is no evidence that such a sale actually occurred, and thus, no evidence of purposeful availment in the forum state);

*Glazier Grp., Inc. v. Mandalay Corp.*, No. 2007 WL 2021762, at *9 (S.D. Tex. July 11, 2007) (even if defendants had posted the allegedly infringing mark on their websites, this would be insufficient to show specific personal jurisdiction); *Nat. Dynamics, LLC v. Conquest Int'l, Inc.*, No. 12-965, 2013 WL 12077798, at *4 (W.D. Tex. July 3, 2013) (for personal jurisdiction to exist on the basis of an interactive website, it is insufficient that a defendant has the potential to interact with or sell products to forum residents; there must be evidence of such activity having occurred); *People Solutions, Inc., supra* (no personal jurisdiction where defendant appeared to have the potential to interact with, sell products to, and contract with forum residents on its website, but no evidence that this level of activity has taken place).[3]

---

[3] Still more district courts in this circuit have reached the same result. For example, in *Autoflex Leasing-Dallas I, LLC v. Autoflex LLC*, plaintiff alleged that by using the name "Autoflex" in promotional material and commercial conduct, defendants engaged in (1) trademark infringement of the Autoflex Service Mark, (2) false advertising under the Lanham Act, 15 U.S.C. § 1125, and (3) unfair competition and false advertising under Texas law. *Autoflex Leasing-Dallas I, LLC v. Autoflex LLC*, No. 16-2589, 2017 WL 713667, at *1 (N.D. Tex. Feb. 23, 2017) (hereinafter, "*Autoflex*"). In *Autoflex*, defendant maintained a website that fell within the middle of the *Zippo* scale. *Id*. In its efforts to support personal jurisdiction over the non-resident defendant, plaintiff asserted that defendant advertised, solicited, negotiated, and transacted business via its website. *Id*. However, plaintiff never alleged or adduced evidence to show that defendant ever sold or financed a vehicle in the forum state. *Id*. The court emphasized that under *Zippo*, personal jurisdiction must be premised on actual internet sales to forum residents, not the mere possibility of sales. *Id*. (citation omitted).

In *CMC Steel Fabricators, Inc. v. Franklin Inv. Corp.*, plaintiff sued defendant for purportedly infringing on plaintiff's trademark fence posts by selling similar products online. *CMC Steel Fabricators, Inc. v. Franklin Inv. Corp.*, No. 15-2854, 2016 WL 3418974 (N.D. Tex. June 22, 2016). Plaintiff argued that the court could exercise specific personal jurisdiction over the non-resident defendant pursuant to the defendant's website and third-party sales. *Id*. However, plaintiff failed to allege that a single, disinterested forum resident had purchased an infringing product through defendant's online store or even used defendant's website. *Id*. Accordingly, the court lacked personal jurisdiction under the *Zippo* test because *Zippo* required actual internet sales to forum residents, not the possibility of sales. *Id*. (citing *Mink, supra*).

In *M3GIRL Designs LLC v. Purple Mountain Sweaters*, the plaintiff argued that the defendant's maintenance of a website that contained infringing material that was accessible in the forum state sufficed to support specific, personal jurisdiction. *M3GIRL Designs LLC v. Purple Mountain Sweaters*, No. 09-2334, 2010 WL 3699983, at *7 (N.D. Tex. Sept. 13, 2010). However, the court held that the maintenance of a website, even one that contains alleged infringing material

Plaintiffs cite a recent Fourth Circuit decision, *UMG Recordings, Inc. v. Kurbanov*, to support their argument that Eastrock's marketing, advertising, and display of infringing products on its website suffices to create minimum contacts with Louisiana. *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 353 (4th Cir.2020). In that case, however, the court relied on evidence that the forum state was one of the most popular states in terms of visitors to the website, and that defendant profited from visitors to the site by selling directed advertising space and data collected to third-party brokers. *Id*. Here, however, there is no evidence that Eastrock's website is similarly visited by Louisiana residents, or that Eastrock profited from advertising thereby. In any event, any profits that Eastrock might derive from the website from advertising arguably are not related to the instant claims and thus, cannot be considered for purposes of specific jurisdiction.

Although not extensively discussed by plaintiffs, the court observes that there is evidence that Eastrock shipped one Baby Food Dispensing Spoon to Louisiana as a result of a sale from a third-party website. However, a defendant's website, even when combined with one sale to, or one client's presence in the forum state that did not arise from defendant's website does not suffice to satisfy the "purposeful availment" requirement for personal jurisdiction. *See People Solutions, Inc.* 2000 WL 1030619, at *4; *Mothers Against Drunk Driving v. DAMMADD, Inc.*, No. 02-1712, 2003 WL 292162, at *6 (N.D. Tex. Feb. 7, 2003) (website coupled with one possible telephone donation does not show purposeful availment). Furthermore, "a corporation's sales to forum residents must be more than isolated occurrences for the assertion of jurisdiction to satisfy the requirements of due process." *Pervasive Software*, 688 F.3d at 228 (citation and internal quotation marks omitted); *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 189 (5th Cir.1978) (sale of four boats in

---

that is accessible in the forum state is not enough to establish specific jurisdiction. *Id*. (citation omitted).

13

Louisiana over a five-year period is isolated and sporadic such that the sales did not constitute purposeful conduct within the forum state as required to support personal jurisdiction); *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1365 (Fed. Cir.2012) (defendants' isolated shipments to the forum state at the request of third parties does not support personal jurisdiction).

Plaintiffs also briefly imply that this court may exercise jurisdiction over Eastrock because it placed a lone Baby Food Dispensing Spoon into the stream of commerce when it delivered the product to Louisiana.  In *Luv N' care, Ltd. v. Insta-Mix, Inc.*, the Fifth Circuit emphasized that "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce."  *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir.2006).  In other words, plaintiffs must show that defendant delivered the infringing product(s) "into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state."  *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 779 (5th Cir.2018) (quoted source omitted).  Nonetheless, "[t]he defendant's contacts must be more than random, fortuitous, or attenuated, or of the unilateral activity of another party or third person."  *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir.2013) (citations and internal quotation marks omitted).

In *Luv N' care*, however, there was evidence that the non-resident defendant had filled sixty-five purchase orders for items bound for Louisiana and sent invoices to the third-party seller, Wal-Mart.  *Luv N' care*, *supra*.  Other evidence showed that the non-resident defendant derived substantial revenue from its sale of thousands of units bound for the forum state.  *Id.*  In holding that the stream of commerce theory supported the exercise of personal jurisdiction, the *Luv N'care* court distinguished the circumstances of that case from the situation in *Charia, supra*, where the

14

court found that "four sporadic and isolated sales did not establish sufficient basis for jurisdiction." *McFadin*, 587 F.3d at 762 (citing *Luv N'care, supra*).

In *Ainsworth v. Moffett Eng'g, Ltd.*, the Fifth Circuit applied the stream of commerce theory to uphold personal jurisdiction, but again, there was evidence that the non-resident defendant had derived substantial income from customers in the forum state stemming from third-party sales of over two-hundred forklifts, worth almost four million dollars. *Ainsworth, supra.*

In this case, the evidence supports no more than a single delivery of one of the three accused products to the forum state. However, the delivery of a single $13 spoon to the forum state at the behest of a third-party seller represents an attenuated, fortuitous contact from which Eastrock could not reasonably anticipate being haled into court in Louisiana to defend trade dress infringement claims that seek nationwide redress, plus copyright infringement claims regarding separate products. *See Charia*, supra; *CMC Steel Fabricators, Inc., supra* (no evidence of volume of forum sales or of special relationship between non-resident defendant and third-party retailers to support personal jurisdiction over infringement claim); *Agape Broadcasters Inc. v. Estate of Sampson through Matix*, No. 19-1099, 2020 WL 5806616, at *4 (W.D. La. Sept. 28, 2020) (declining to apply stream of commerce theory, *inter alia*, where there were no allegations or evidence to show the extent of defendant's sales or business activities in Louisiana); *but see Boat Serv. of Galveston, Inc. v. NRE Power Sys., Inc.*, 429 F.Supp.3d 261, 272 (E.D. La.2019) (applying stream of commerce theory based on one, but presumably significant engine sale, plus follow-up technical support, while observing that no quantum of contact is required once actual knowledge or expectation of the contact is proven).

Finally, although not argued by plaintiffs, the court would be remiss in failing to at least mention the "effects test" established by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104

S.Ct. 1482, 79 L.Ed.2d 804 (1984). Under the "effects" test, a court may exercise specific jurisdiction when "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the resulting harm to the plaintiff; and (3) the defendant expressly aimed his conduct at the forum, so that the forum can be said to be the focal point of the tortious activity." *Nat. Dynamics, LLC, supra* (citing *Calder*, 465 U.S. at 789, 104 S.Ct. 1482)). Ultimately, "the 'effects' test is but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts with the forum." *Revell*, 317 F.3d at 473.

Even if plaintiffs could satisfy the first two prongs of the "effects" test, they have not made a prima facie showing that defendant expressly aimed its conduct at the forum. *See Nat. Dynamics, LLC, supra*; *United Servs. Auto. Ass'n v. New Day Fin., LLC*, No. 17-0759, 2018 WL 1899807, at *6 (W.D. Tex. Mar. 8, 2018), *R&R adopted,* 2018 WL 1905113 (W.D. Tex. Mar. 27, 2018). Indeed, "[a]pplication of the effects test in a case involving Internet activities 'requires proof that the out-of-state defendant's Internet activity is expressly directed at or directed to the forum state.'" *Nat. Dynamics*, 2013 WL 12077798, at *4 (quoting *Revell*, 317 F.3d at 475). A website that is "directed at the entire world instead of specifically targeted to residents of the forum state cannot support personal jurisdiction over a nonresident defendant." *Id.* (internal quotation marks omitted). Furthermore, "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *McFadin,* 587 F.3d at 762 (*Calder* inapplicable where actions of allegedly selling infringing handbags were not directed towards forum state in any matter).

Moreover, it is of no moment that defendant arguably could have determined through an internet search that plaintiffs are Louisiana-based companies. *See Ouazzani-Chahdi v. Greensboro News & Record, Inc.*, 200 Fed. Appx. 289, 293 (5th Cir.2006). "[T]he plaintiff's mere residence in

16

the forum state is not sufficient to show that the defendant had knowledge that effects would be felt there; a more direct aim is required." *Id*. (citations and internal quotation marks omitted).

In sum, the court finds that plaintiffs have not made a prima facie showing of minimum contacts sufficient to find that Eastrock purposefully availed itself of the benefits and protections of doing business in Louisiana as required to support the exercise of personal jurisdiction. Absent requisite minimum contacts, the court need not analyze the "fair play and substantial justice" prong of the personal jurisdiction analysis. *Autoflex Leasing-Dallas I, LLC,* 2017 WL 713667, at *5 n.6 (citation omitted); *May v. Strain*, No. 13-0176, 2014 WL 2003100, at *6 (E.D. La. May 14, 2014).

## II. Sufficiency of the Pleading

Personal jurisdiction is "an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584; 119 S.Ct. 1563, 1570 (1999) (citation and internal quotation marks omitted). In the absence of personal jurisdiction over the defendant -- as recommended here -- the court is unable to reach defendant's further or alternative motion to dismiss for failure to state a claim upon which relief can be granted.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the motion to dismiss for lack of personal jurisdiction [doc. # 10] filed by defendant, Eastrock, L.L.C. d/b/a Haakaa be GRANTED, and that plaintiffs' claims be DISMISSED, WITHOUT PREJUDICE, in their entirety. Fed.R.Civ.P. 12(b)(2).

IT IS FURTHER RECOMMENDED that defendant's motion to dismiss for failure to state a claim upon which can be granted [doc. # 10] be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have

**fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 23rd day of October 2020.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE